IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JEANETTA C. ASHFORD | § | |
| v. | § | CIVIL ACTION NO. 6:11CV155 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

MEMORANDUM OPINION AND ORDER

On March 30, 2011, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. The case was assigned to the undersigned pursuant to 28 U.S.C. § 636(c).

**I.  HISTORY**

On July 3, 2007, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning April 13, 2007. *See* Transcript ("Tr.") at 12 (Administrative Law Judge (ALJ) decision). The claim was denied initially on December 11, 2007, and on reconsideration on February 7, 2008. *Id*. The Plaintiff sought review of the denial. An administrative hearing was conducted before the ALJ on August 21, 2009. *Id*. at 12, 40-85 (hearing transcript). Plaintiff appeared and testified, represented by counsel. In addition, a vocational expert, Karyl Kuuttila, also testified.

The ALJ issued an unfavorable decision on November 3, 2009, Tr. at 9-24, and Plaintiff sought review. On January 29, 2011, the Appeals Council denied review. Tr. at 1. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Plaintiff then filed the instant action for review by this Court.

## II.　STANDARD

Title II of the Act provides for federal disability insurance benefits. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); SSR 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir.2003) (*citing Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age,

education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42. U.S.C. § 405(g) (2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(I)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id*.; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments

that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. § 404.1520(b)-(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* To obtain Title II disability benefits, Plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

**III.     ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ made the following findings in his November 3, 2009, decision:

The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

The claimant has not engaged in substantial gainful activity since April 13, 2007, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

The claimant has the following severe impairments: obesity and rheumatoid arthritis (20 C.F.R. § 404.1520(c)).

The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) in a sit/stand/walk at-will type work environment. She can occasionally climb ramps and stairs, kneel, crouch, and crawl; she is limited in handling/feeling to no more than frequently. The claimant cannot climb ropes or ladders. She can perform a 1-2 step job. She has no visual, communicative, or environmental limitations. She does not have a severe mental impairment that would prevent her from performing light work.
>
> The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 C.F.R. §§ 404.1569 and 404.1569(a)).
>
> The claimant has not been under a disability, as defined in the Social Security Act, from April 13, 2007, through the date of this decision (20 C.F.R. § 404.1520(g)).

Tr. at 14, 15, 19, 20. The ALJ determined that Plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act. *Id*. at 20-21.

## IV. DISCUSSION AND ANALYSIS

Plaintiff alleges that she cannot work because of her "Rheumatoid Arthritis." *See* Tr. at 135 (undated Disability Report - Adult). She asserts that this condition limits her ability to work because "My hands are deformed from the arthritis. I have pains in my back and in my left hip. I can't lift and carry very much. My hands tremble and shake if I try to do too much." *Id*. She reported that her condition changed as of about July 1, 2007, in that "both hands hurt more and my wrist my left leg hurt and foots below my little toes my foot an both side is spreaded out." *Id*. at 156 (undated Disability Report - Appeal) (as in original but amended from all capitals). She asserts new limitations from this change because "I'm weaker my feets are swollen all the times and my ankles.) *Id*. (as in original but amended from all capitals). She also reported a new illness or condition as of July 2007, that "the middle of my back when I bend over it feels like something is there, pressing, it hurts sometime to breathe." *Id*. (amended from all capitals). She again reported a change in her condition as of about February 2008, in that "I have knots on my ankles." *Id*. at 169 (undated Disability Report - Appeal).

5

She also asserts new limits on her ability to perform work because "My elbows hurt more." *Id*. She also reported another new illness as of about February 2008, in that "I have more neck pain and head pain." *Id*.

During the administrative hearing, Plaintiff repeated and expanded on these statements. She testified she had worked as a certified nurse's aid from 2002 to 2007 and then spent about three months as a fast food cook when she had to stop working on April 13, 2007, because her hands were hurting too bad as well as other parts of her body, and she fell a lot. Tr. at 50. However, she continues to work part time as a transport aid looking after patients going to the doctor. *Id*. at 56. She testified she has rheumatoid arthritis that makes her weak and unable to lift or grip items; she stated she gets "knots" on her elbows, ankles and other parts of her body from it. *Id*. at 63. She takes methotrexate, but testified it does not help and has side effects including dizziness and disorientation. Tr. at 63-64. She also testified as to her activities of daily living.

Plaintiff asserts three issues: (1) the ALJ failed to properly evaluate Plaintiff's subjective complaints and credibility (Pltf Brf at 2, 5); (2) the ALJ erred in disregarding the opinion of a treating physician, the record and the findings of a consultative examining physician in favor of the opinion of non-examining State Agency physicians (*id*. at 2, 7); and (3) the Commissioner failed to sustain his burden of establishing that there is other work in the national economy that Plaintiff could perform (*id*. at 2, 9).

### A. The ALJ's Determination Of Plaintiff's Credibility

Plaintiff first contends that the ALJ did not properly assess the credibility of her subjective evidence of pain and limitations. The ALJ, as opposed to the Court, is the fact finder and may determine the credibility of witnesses and medical evidence. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). As the Fifth Circuit has determined,

> It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference. The determination whether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence. Moreover, pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment to be disabling. Subjective complaints of pain must also be corroborated by objective medical evidence.

*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.2001) (per curiam) (internal citations omitted). It is well settled that pain in and of itself may be disabling. *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Not all pain, however, is disabling. *Carry v. Heckler*, 750 F.2d 479, 485 (5th Cir. 1985). To rise to the level of disabling, pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Chambliss*, 269 F.3d at 522; *Falco*, 27 F.3d at 163. The ALJ must consider subjective evidence of pain, but it must be corroborated by objective medical evidence and it is within the ALJ's discretion to determine the pain's disabling nature. *Wren*, 925 F.2d at 128-29; *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir.1989); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive of disability.").

An ALJ must follow a two-step process in determining the credibility of a plaintiff's subjective claims. First, the ALJ must determine whether there is an impairment that reasonably produced the symptoms of which the plaintiff complains. *Salgado v. Astrue*, 271 Fed. Appx. 456, 458-59 (5th Cir. 2008) (citing SSR 96-7p, 1996 WL 374186, at *1 (1996)). Here, the ALJ determined that Plaintiff has the severe impairments of obesity and rheumatoid arthritis. Tr. at 14. Further, the ALJ specifically found that "the claimant's medically determinable impairments could cause some of the alleged symptoms . . . ." *Id*. at 16.

Second, if such an impairment is identified, the ALJ must then consider the plaintiff's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how they affect the plaintiff's ability to do basic work. This requires the ALJ to make a finding about the credibility of the plaintiff's statements about the symptoms and their functional

effects. *Salgado*, 271 Fed. Appx. at 459 (citing SSR 96-7p). In this case, the ALJ found that "the claimaint's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. at 16.

A non-exclusive list of factors to be considered in making the second determination include: "(1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; (6) measures other than treatment the claimant uses to relieve pain or other symptoms [ ]; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." *Wilson v. Astrue*, 2010 WL 1566748, at *10 (N.D. Tex. Mar. 19, 2010) (quoting SSR 96-7p, 1996 WL 374186, at *3); *see also* 20 C.F.R. § 404.1529(c)(3). However, though an ALJ must give specific reasons for a credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005).

Here, the ALJ reviewed the Plaintiff's testimony at some length, including that she had fallen more than once, had arthritis and knots related to arthritis on her elbows, legs and private parts; that she took medication, which had side effects including stomach pain and dizziness; that she could sit for 10-15 minutes on a good day and stays in bed on bad days; that she did not sleep well due to pain and the arthritis; that her hands are swollen; that she cannot lift 20 pounds because of her weak hands; and that she testified she heard voices and thought of suicide often. Tr. at 16, 17 (succinctly summarizing Plaintiff's testimony; *see* Tr. at 50-76). He also reviewed virtually every medical source's progress

notes, findings, objective test results and opinions in the medical evidence of record. *See* Tr. at 15-16; 17-19 (summarizing the medical evidence of record, Tr. at 199-247). He explicitly considered the nature, location, frequency and factors aggravating Plaintiff's pain, as well as the medication she takes and its effectiveness, as well as other measures she takes to alleviate her symptoms. In addition, he discussed her testimony of activities of daily living. Ultimately, the ALJ determined that "the claimant's allegations are found unsupported by the preponderance of the objective medi[c]al findings, which fail to establish significant or advanced physical or mental pathology, by conserved daily activities and functioning, by demeanor throughout the record, by statements and assessments fro examining and evaluating sources, and by other evidence of records. . . . [t]hus, I cannot find the claimant's allegations credible, nor to result in limitations additional to the ones stated." Tr. at 17. In short, the ALJ based his credibility determination on most, if not all, of the factors enumerated above.

Plaintiff contends that the ALJ should have expanded the record with a consultative examination of her symptoms of depression. As stated above, a claimant seeking benefits has the burden of proving a disability. *Wren*, 925 F.2d at 125. Here, Plaintiff presented nothing other than a bare couple of sentences during the administrative hearing regarding any manifestation whatsoever, and did not contend that any mental impairment was a part of her alleged disability. Most tellingly, none of her application papers included any contention of a mental impairment at all. As far as her brief testimony goes, the ALJ has a duty to develop the relevant facts fully and fairly during an administrative hearing. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984); 42 U.S.C. § 405(g). This duty to develop the record and explore the relevant facts is heightened when a claimant is not represented. *Kane*, 731 F.2d at 1219. To succeed on a claim that the record was not adequately developed or that the hearing was otherwise deficient, however, a claimant must show prejudice resulting from the ALJ's actions. *Carey*, 230 F.3d at 142.

9

In this case, Plaintiff was represented throughout the administrative hearing by counsel, the same counsel representing Plaintiff in the instant proceeding before this Court. It was under counsel's examination that Plaintiff testified that she sometimes feels that people talk about her and that she hears them, thinking it's her family, but that "it's just something I'll be hearing." Tr. at 71-72. She also testified she thinks of suicide but also testified that when she was driving and some cars were coming at her, she took her foot off the gas, but then put her foot back on the gas and "I went on through." Tr. at 72. That was the entire substance of her testimony as to any mental effect from her arthritis. Counsel did not develop the line of questioning any further. He also did not ask the ALJ to refer his client for a mental consultative examination.

Given that there was no objective medical evidence of any mental impairment,[1] no claim of mental impairment, no testimony of mental impairment other than the brief comments adduced by counsel, above, but not developed by counsel at the time of the hearing, and the ALJ's overall findings as to Plaintiff's credibility, the Court cannot find that Plaintiff was prejudiced in any way by the ALJ's conduct of the administrative hearing. Therefore, the ALJ's credibility finding is due deference, *Chambliss*, 269 F.3d at 522, and this contention is without merit.

### B. Treating Physician's Opinion

Plaintiff next contends that the ALJ failed to properly consider the opinions of three physicians, including one consultative examining physician and two treating physicians. Plaintiff is incorrect.

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d at 455 (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir.1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994), *cert. denied*, 514 U.S. 1120, 115 S. Ct. 1984, 131 L. Ed. 2d 871 (1995)). "A

---

[1] Although it was unnecessary for the ALJ to so note, the Court observes that the consultative examining physician discussed in the next section below, Dr. Welch, found "no anxiety or depression" as a result of her examination of Plaintiff. *See* Tr. at 212.

treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton*, 209 F.3d at 455 (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (in turn, citing 20 C.F.R. § 404.1527(d)(2)). "Good cause for abandoning the treating physician rule includes disregarding statements [by the treating physician] that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by evidence." *Leggett*, 67 F.3d at 566 (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (bracketed phrase added in *Leggett*), *cert. denied* 514 U.S. 1120, 115 S. Ct. 1984, 131 L. Ed. 2d 871 (1995)).

Before declining to give controlling weight to a treating physician's opinion, the ALJ must consider the following factors: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Newton*, 209 F.3d at 456 (citing 20 C.F.R. § 404.1527(d)(2); *see also* Social Security Ruling ("SSR") 96-2p). However, such an analysis is only required "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist . . . ." *Id*. at 453; *Holifield v. Astrue*, 402 Fed. Appx. 24, 27 (5th Cir. 2010) (per curiam); *Hall v. Astrue*, 2011 WL 1042285, at *8 (N.D. Tex. Mar. 21, 2011).

Plaintiff first contends that the ALJ did not properly credit the opinion of consultative examining physician Laura Welch, M.D., characterizing the limitations she found as being "far less than the RFC assigned by the ALJ." Pltf Brf at 7. Dr. Welch examined Plaintiff on October 31, 2007. On examination, Dr. Welch found a well developed, well nourished woman in no acute distress. Tr. at 213. Most examination results were unremarkable. Of note, Dr. Welch observed that Plaintiff

11

showed no rheumatoid nodules on exposed areas, and had no rashes or suspicious lesions. *Id*. Her musculoskeletal examination revealed chronic degenerative changes in the small joints of Plaintiff's wrists and hands with no evidence of joint effusions. There was limited range of motion in Plaintiff's lumbar spine with flexion to about 70 degrees. *Id*. On these findings, Dr. Welch opined as to Plaintiff's functional limitations:

> According to my examination findings and patient's history, this patient can sit comfortably for about 20 minutes, after which time she must reposition or stand up and move about due to stiffness in her lower back. Patient can stand approximately 30 minutes after which she would have to sit down and rest due to pain in her knees and lower back. Patient can walk approximately 2 city blocks comfortably then must stop and rest due to back and knee pain. Patient likely has some limitations with extended tactile maneuvers such as prolonged typing or handwriting. Patient does not demonstrate any speech or hearing deficits.

*Id*. On this quote alone, Plaintiff claims in a conclusory manner that "[t]he ALJ ignored the findings of Dr. Laura Welch who found that Plaintiff[']s limitations were far less than the RFC assigned by the ALJ[.]" Pltf Brf at 7. Plaintiff does not explain what she means by this or argue the issue any further.

The RFC that the ALJ assessed for Plaintiff included that she "has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) in a *sit/stand/walk at-will* type work environment." Tr. at 14 (emphasis added). The "sit/stand/walk at-will" provision succinctly addresses Dr. Welch's opinion that Plaintiff must be able to reposition or stand and move about after sitting about 20 minutes, sit down after standing about 30 minutes, and stopping after walking about 2 city blocks. The provision enables Plaintiff to act according to her own determination of her needs. It is incorporated within and as a part of the ALJ's RFC determination. Therefore, Dr. Welch's opinion has been fairly considered and included.

Next, Plaintiff complains that the ALJ ignored an examination note by Roger W. Porter, M.D., on September 23, 2008. Specifically, Plaintiff points out that Dr. Porter (referred to in Plaintiff's brief as "Dr. Rogers") diagnosed Plaintiff with nodular destructive rheumatoid arthritis. *See* Pltf Brf at 8 (citing Tr. at 228-29). That is correct. However, the ALJ acknowledged Plaintiff's diagnosis of

12

rheumatoid arthritis and found it is a severe impairment. *See* Tr. at 14. Dr. Porter made no findings as to any specific limitations his diagnosis placed on Plaintiff. A diagnosis by itself "does not prove disability"; instead, "[t]o succeed on a claim for disability benefits, [Plaintiff] must show an impairment so severe as to incapacitate him from performing *any* substantial gainful activity." *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985) (emphasis in original) (citing *Jones v. Heckler*, 702 F.2d 616, 620 5th Cir. 1983). There is nothing in Dr. Porter's progress note to suggest such incapacitation.

Finally, Plaintiff claims that the ALJ should have credited a "Treating Physician Opinion of Patient Limitations" form completed by John Klein, M.D., on June 29, 2009, after the administrative hearing. *See* Tr. at 247. Although the form indicates that Plaintiff has been a patient of Dr. John Klein since "11/04," there is virtually nothing in the record to support either that statement or the opinion overall. It is unclear whether Dr. John Klein is also Martin Klein, M.D., whose records briefly appear in the medical evidence of record. *See* Tr. at 199-206; 233-42. Even if so, the scant records from Dr. Martin Klein contain nothing at all to substantiate the findings in the brief opinion questionnaire, which itself contains no reference to any medical examinations or testing. Instead, the opinion is represented by checkmark type responses to a total of six questions. Among these questions, Dr. Klein indicated that Plaintiff would not "be able to work in a productive manner on a sustained basis for 8 hours per day for 40 hours a week." Tr. at 247. Other than a cursory reference to her pain, Dr. Klein's sole substantiating comments were that:

> Patient has severe rheumatoid arthritis, already having deformity of joints especially hands, and we (myself & Rheumatologist) have yet to be able to get her disease process under control. Still actively changing meds.

*Id*. The ALJ found his opinion conclusory and without sufficient treatment notes or test results. The Court agrees that there is nothing in the progress notes signed by Dr. Martin Klein to support this finding other than the actual diagnosis of rheumatoid arthritis. Further, the ALJ found that this opinion was on an issue reserved to the Commissioner, that is, that Plaintiff is disabled. *See* 20 C.F.R. §§

13

404.1527(d)(1), 416.927(d)(1); *Giles v.* Astrue, 2011 WL 2847449, at *5 (5th Cir. July 18, 2011) (per curiam); *Cooper v. Hewlett-Packard Co.*, 592 F.3d 645, 656 (5th Cir. 2009) ("a doctor's conclusion that a social security disability applicant is 'disabled' or 'unable to work' is not a medical opinion entitled to deference, but rather a legal conclusion 'reserved to the Commissioner,'" citing and quoting *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam)); *Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989). Plaintiff argues in a cursory manner that Dr. Klein's opinion simply reflected "his patient's capabilities to sustain activities." Pltf Brf at 8. The Court does not agree. Instead of opining as to Plaintiff's ability to perform work-related activities, Dr. Klein expressly opined that she could not "work in a productive manner on a sustained basis for 8 hours per day for 40 hours a week." Tr. at 247. That can only be read as an opinion on the ultimate issue of disability. Therefore, the ALJ was entitled to disregard the opinion.

Therefore, this contention is without merit.

    **C.    The ALJ's Step Five Determination**

Finally, Plaintiff argues that the three jobs identified by the vocational expert in response to the ALJ's hypothetical questions at Step Five each have a requirement that make them unsuitable for her RFC. Therefore, she contends, the ALJ did not properly identify work at Step Five that Plaintiff can perform.

The ALJ's RFC determination, and his hypothetical question to the vocational expert, included the restriction to "one/two-step job or task - - job tasks," *see* Tr. at 78; *see also* Tr. at 14 (RFC determination). Plaintiff complains that the three jobs the vocational expert identified in response to the hypothetical question are all unsuitable because they require a Reasoning Level of 2. Pltf Brf at 10. Those jobs include Bakery Worker, Dictionary of Occupational Titles ("DOT") code no. 524.687-022, 1991 WL 674401 (G.P.O.); Ticket Seller, DOT code no. 211.467-030, 1991 WL 671853 (G.P.O.); and Cashier, DOT code no. 211.462-010, 1991 WL 671840 (G.P.O.).

In the first place, the three jobs doe not uniformly require a Reasoning Level of 2. The first, Bakery Worker, requires Reasoning Level 1; the second, Ticket Seller, requires Reasoning Level 2; and the third, Cashier, requires Reasoning Level 3. In that regard, Plaintiff's argument is fundamentally misplaced.

Notwithstanding that fundamental problem, Plaintiff's own argument concedes a Reasoning Level of 1 is a satisfactory job for the restriction of a "one/two step job." That being the case, the Commissioner's burden at Step Five is satisfied by showing the existence of only one job with a significant number of available positions that the claimant can perform. *See Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009) (citing *Evans v. Chater*, 55 F.3d 530, 532-33 (10th Cir. 1995)). Therefore, the Bakery Worker type job is, by itself, adequate to meet the Commissioner's burden at Step Five and Plaintiff's contention is without merit.

However, a Reasoning Level of 2 also satisfies the hypothetical question posed by the ALJ. Reasoning Level 2 requires the ability to "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *See* Dictionary of Occupational Titles, Appendix C. Despite Plaintiff's argument, an occupational Reasoning Level of 2 or below is within the ambit of "simple" type limitations, including one-two step type jobs. *See, e.g., Dugas v. Astrue*, 2009 WL 1780121, at *6 & n.14 (E.D. Tex. June 22, 2009). Therefore, the Ticket Seller type occupation is also within Plaintiff's RFC. On that basis, Plaintiff's final contention is without merit. Although the holding in *Dugas* also contemplates that a Reasoning Level of 3 may also fall within this limitation, given the existence of at least two occupations suitable for Plaintiff, the Court need not address the issue further.

V. **CONCLUSION**

Based on the foregoing, it is accordingly

15

**ORDERED** that the Commissioner's decision is hereby **AFFIRMED** and the above-entitled social security action is hereby **DISMISSED WITH PREJUDICE**.

**So ORDERED and SIGNED this 4th day of March, 2013.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE